# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

ROBERT MCINERNEY, )
)
        Plaintiff, )
)
v. ) Case No. CIV-13-35-RAW-SPS
)
CAROLYN W. COLVIN, )
Acting Commissioner of the Social )
Security Administration,[1] )
)
        Defendant. )

## REPORT AND RECOMMENDATION

    The claimant Robert McInerney requests review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying his application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining that he was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

    Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v.*

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id.* §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant has a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born on April 30, 1963, and was forty-eight years old at the time of the most recent administrative hearing (Tr. 690). He has an eleventh grade education, and has worked as a hand packager and machine packager (Tr. 123, 680). The claimant alleges inability to work since September 1, 2005 due to bilateral carpal tunnel syndrome and problems with both arms and shoulders (Tr. 118).

**Procedural History**

On March 21, 2008, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ Deborah L. Rose conducted a hearing and determined that the claimant was not disabled in a decision dated January 21, 2010. The Appeals Council denied review, but this Court reversed on appeal in Case No. CIV-10-153-SPS and remanded the case to the ALJ for further proceedings (Tr. 747-755). ALJ Trace Baldwin conducted a second administrative hearing and again determined that the claimant was

not disabled in a written opinion dated October 30, 2012 (Tr. 669-681). The Appeals Council again denied review, so ALJ Baldwin's decision represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step four of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform light work, *i. e.*, he could lift/carry ten pounds frequently and twenty pounds occasionally, and stand/walk/sit for six hours in an eight-hour workday, and that because he could perform light work he could also perform sedentary work (Tr. 674). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled according to "the Grids," *i. e.*, Medical-Vocational Rule 202.18 (Tr. 680-681).

**Review**

The claimant contends that the ALJ erred: (i) by failing to properly determine his RFC, (ii) by failing to properly analyze his credibility, (iii) because numerous portions of the administrative hearing were inaudible and therefore not a complete representation, and (iv) by failing to properly develop the record, particular with regard to Social Security Ruling 96-7p. The undersigned Magistrate Judge finds that the ALJ did fail to properly evaluate the claimant's RFC, and the decision of the Commissioner should therefore be reversed.

As relevant to this appeal, the medical evidence reveals that the claimant had the severe impairments of residuals of left fracture status post ORIF and bilateral carpal

tunnel syndrome status post bilateral release, and the nonsevere impairments of migraines and hypertension (Tr. 672-673). Dr. Sri Reddy conducted an examination of the claimant on April 4, 2012 (Tr. 980-981). He noted a surgical scar on the left distal forearm on the lateral side, as well as a decreased range of motion in the left wrist, 5/5 strength in the upper and lower extremities, and equal and symmetric reflexes (Tr. 980). He also completed a Medical Source Statement (MSS) of the claimant's ability to do work. In addition to finding that the claimant could lift/carry ten pounds frequently and twenty pounds occasionally, and stand/walk/sit eight hours in an eight-hour workday, he stated that the claimant could only occasionally push/pull with the left hand, and that he could never climb ladders or scaffolds or be exposed to unprotected heights (Tr. 982-985).

The claimant testified at the administrative hearings that he has received treatment at the W.W. Hastings Indian Hospital since 1998 or 1999 for a wrist fracture. He received treatment through 2007 after a second surgery was performed to correct the non-union of the fracture (Tr. 32-33). At that time, the claimant was told that the doctors at Hastings told him that they had done all that they could do to correct his fracture by performing two surgeries, and the claimant stopped pursuing treatment at Hastings as a result (Tr. 33). The claimant testified that as part of the surgeries that were performed, metal plates were placed in his wrist (Tr. 33-34). The claimant averred that he was unable to drive because his hands would go numb, that he can't do laundry or change a tire without help, and that it takes him two days to mow when it should take him only an hour (Tr. 34-35). The claimant testified that he was unable to fill out the paperwork for his disability claim

because his "hands shake real bad and you wouldn't be able to read [his] writing" (Tr. 36, 705). The claimant testified that his hands were swollen for about two days the last time he attempted to use a sander (Tr. 38). At the second hearing, the claimant testified that he had undergone one surgery on his right hand in 2001, and three on his left in 2002, 2005, and 2006 or 2008 (Tr. 697-698, 714). As to his left wrist, he testified that despite the three surgeries he still had non-union (Tr. 699-700). He stated that as a result, he could not lift a gallon of milk, open a pickle jar, or pick up a pan of spaghetti with his left hand, and that he only uses his left hand to tie his shoes or button a shirt (Tr. 701-703). He testified that he can mow his lawn with a push mower, but that it takes him all day rather than an hour or two as it should (Tr. 704). As to his right wrist, he stated that he has problems with it swelling every morning when he wakes up (Tr. 704-705). He further explained that he struggles with pain in his neck causing migraine headaches, as well as numbness in his legs that causes him to have to stand and stretch (Tr. 708-709).

In his written opinion, the ALJ summarized the claimant's testimony at both administrative hearings, as well as generally reviewing the medical evidence. He found that the claimant had not received the type of treatment that he expected to see for a disabled individual, and that there were significant gaps in the claimant's history of treatment (Tr. 675-676). He found that there were no restrictions recommended by treating physicians, and discussed the opinions of the consultative examiners (Tr. 677). As to consultative examiner Dr. Ronald Myers, the ALJ gave little weight to his 2009 opinion that the claimant could sit/stand/walk for three hours in an eight-hour workday

and never lift or carry anything, finding it inconsistent with his release back to work and that there was no evidence to support such limitations (Tr. 661-665, 677-678). The ALJ then gave great weight to Dr. Reddy's MSS as fully supported by the medical record (Tr. 678). He then gave great weight to the opinions of state reviewing physicians who found the claimant had no severe impairments at all (Tr. 49-52), but "modified" their opinions to find that the claimant's residuals from his left fracture and bilateral carpal tunnel were severe impairments (Tr. 678-679). Ultimately, he found that the claimant could perform the full range of light work, as well as sedentary work.

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted] [emphasis added], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the

opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003) [quotation marks omitted], *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). Here, although the ALJ stated in his written opinion that he had assigned "great weight" to Dr. Reddy's opinion, he provided no reasons for failing to adopt the limitations related to pushing/pulling, as well as climbing ladders/scaffolds and exposure to unprotected heights. This was error. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."), *citing Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) and *Hamlin v. Barnhart*, 365 F.3d 1208, 1219 (10th Cir. 2004). Furthermore and contrary to this Court's previous remand order, the ALJ again failed to properly discuss substantial medical evidence that *supported* the claimant's testimony about the severity of his pain. He underwent two osteotomies to correct the non-union of the left ulnar shaft, one in September 2005 (Tr. 232-33) and one in April 2006 (Tr. 158-59). He complained of pain often during his visits to Hastings and Muskogee Bone, Joint, and Sports Medicine Clinic (Tr. 158, 162, 282, 294, 308, 375, 395). The claimant has taken numerous pain medications, including acetaminophen with codeine, Percocet, and Oxycodone, related to his fractured arm (Tr. 159, 377, 379, 388). "Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'" *Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1239 (10th Cir. 2001).

The ALJ compounded his error when he engaged in improper analysis related to the claimant's pain. Rather than discuss the evidence, the ALJ rejected the claimant's pain using boilerplate language that stated, "[s]evere pain will often result in certain observable manifestations, such as loss of weight due to loss of appetite from incessant pain, muscular atrophy due to muscle guarding, muscular spasms, the use of assistive devices, prolonged bed rest, or adverse neurological signs" (Tr. 679). *Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004) ("[B]oilerplate language fails to inform us in a meaningful, reviewable way of the specific evidence the ALJ considered in determining that claimant's complaints were not credible."), *citing Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001). In assessing allegations of pain, an ALJ "must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling." *Musgrave v. Sullivan*, 966 F.2d 1371, 1375-76 (10th Cir. 1992), *citing Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987). In this case, there is evidence that the claimant's bilateral carpal tunnel syndrome was a pain-producing impairment, and the ALJ was therefore obliged to consider his allegations of pain as set out in *Musgrave*. *Carpenter v. Astrue*, 537 F.3d 1264, 1268 (10th Cir. 2008) ("The ALJ's purported pain analysis is improper boilerplate because he merely recited the factors he was supposed to address and did not link his conclusions to the evidence or explain how Mrs. Carpenter's

repeated attempts to find relief from pain, and all the drugs she has been prescribed for pain, resulted in a conclusion that she is unlimited in any regard by pain or the side effects from her pain medication.") [citations omitted].

The ALJ thus failed to account for the claimant's pain (disabling or otherwise) in formulating his RFC and determining what work, if any, he could perform with his level of pain. *See, e. g., Harrison v. Shalala*, 28 F.3d 112, at *5 (10th Cir. 1994) (unpublished table opinion) ("If the ALJ finds that plaintiff's pain, by itself, is not disabling, that is not the end of the inquiry. The [Commissioner] must show that jobs exist in the national economy that the claimant may perform *given the level of pain [he] suffers*.") [citation omitted]. This would ordinarily require the opinion of a vocational expert, *see, e. g., id.* at *5, but the ALJ did not consult a vocational expert at the second administrative hearing. Additionally, the ALJ took on the role of physician when he cited specific symptoms he expected to see. *Miller v. Chater*, 99 F.3d 972, 977 (10th Cir. 1996) ("The ALJ may not substitute his own opinion for that of claimant's doctor."), *citing Sisco v. United States Department of Health & Human Services*, 10 F.3d 739, 743 (10th Cir. 1993) *and Kemp v. Bowen*, 816 F. 2d 1469, 1475 (10th Cir. 1987). Because the ALJ failed to properly evaluate Dr. Reddy's opinion or to account for the claimant's pain, the decision of the Commissioner should be reversed and the case remanded for further analysis of the claimant's allegation of pain by the ALJ. If this results in adjustments to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.

**Conclusion**

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 6th day of March, 2014.

_____
Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma